# BSWB

ATTORNEYS AT LAW                                                        www.bswb.com

BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC   One Battery Park Plaza, 32nd Floor | New York, NY 10004 | P: 212.820.7700 | F: 212.820.7740

**Evan Shapiro**
Direct Line: 212.820.7712
Email: eshapiro@bswb.com

April 11, 2014

Via ECF and Courtesy Copy Via Email
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
Torres_NYSDChambers@nysd.uscourts.gov

      Re:    *Planetarium Travel, Inc. v. Altour International Inc.,* 13-cv-08538-AT

Dear Judge Torres:

      We represent the defendants in the above-referenced matter. On behalf of defendant Altour International, Inc. ("Altour"), the sole defendant named in the currently operative First Amended Complaint (the "Amended Complaint" or "FAC"), we write pursuant to Your Honor's Individual Practices Rule III.A., to request a pre-motion conference in connection with Altour's intended motion to dismiss, pursuant to Fed. R. Civ. P. Rule 12(b)(6).

      On behalf of defendants Altour Air L.L.C., Altour Service Inc., and Altour Management Technology, Inc., who are not named in the Amended Complaint, we ask that the Docket be modified to reflect that they are no longer parties in this action.

## Procedural History

      Prior to this request, in connection with PTI's original Complaint, Altour complied with Your Honor's Individual Practices Rules III.B.i. and III.A.i. [Dkt # 13].

      PTI did not respond substantively to Altour's Rule III.A.i. letter. Rather, PTI sought, and was granted, leave to amend its Complaint. [Dkt. #16]. The Amended Complaint, filed on March 17, 2014 [Dkt. #17], has narrowed the issues in this case by withdrawing claims against three of the previously named defendants and withdrawing three of the previously asserted causes of action.[1] The Amended Complaint asserts only two causes of action, each against only Altour, and each alleging a conspiracy in restraint of trade in violation of § 1 of the Sherman Act.

      Additionally, in its pre-motion correspondence, Altour requested production of the confidential settlement agreement ("Prior Settlement Agreement"), described by PTI as entered in settlement of a prior suit by PTI against American Express Travel Related Services, Inc. ("Amex"). *See* FAC ¶35. Altour requested this production as PTI's prior suit involved the same

---

[1] The abandoned causes of action purported to assert attempted monopolization in violation of § 2 of the Sherman Act, violation of the New York Donnolly Act, and Tortious Interference/Lost Business Opportunity.



core of allegations as this suit (*i.e.,* alleged misconduct in connection with Amex's decision not to renew its contractual relationship with PTI). The potential relevance of the Prior Settlement Agreement to the present suit is also demonstrated in the letter from Amex's counsel to PTI's counsel, a redacted version of which Altour's counsel received and attached to an April 3, 2014 letter to the Court. [Dkt # 20].

PTI and Amex recently agreed to provide Altour with a copy of the Prior Settlement Agreement and an unredacted version of Amex's letter regarding this suit. However, a confidentiality agreement is required and has not yet been entered. Accordingly, Altour respectfully submits that it should be allowed an opportunity to consider, and present in a single motion, any limitation on this action that may exist based on the terms of the Prior Settlement Agreement and other PTI-Amex agreements referenced in the Amex letter. Altour will supplement this letter if necessary upon receipt and review of these materials.

Allegations of the Amended Complaint

PTI, Altour, and Amex, are participants in the highly competitive market for travel services, including the sale of airline tickets. In this action, PTI purports to assert claims that Altour and Amex conspired to unreasonably restrain trade in violation of § 1 of the Sherman Act.

PTI alleges that its business involves two parts. First, it is an independent travel agent, which previously operated as an authorized Amex travel representative pursuant to a franchise agreement with Amex. FAC ¶¶8, 11-15, 17-18, 38. As an Amex franchisee, PTI was not limited to selling Amex products to Amex cardholders. PTI acknowledges it was allowed to, and did in fact, sell products and services: (a) other than those "supplied" by Amex; and (b) to customers who did not use Amex credit cards (defined by PTI as "the general public"). *Id.* ¶¶17, 40. Second, PTI alleges that it separately conducts business as a discount "consolidator" of airline tickets. In this aspect of its business, PTI alleges, it purchases inventory at discounts and resells to three types of customers: (a) other travel agents; (b) Amex cardholders; and (c) the general public. *Id.* ¶¶16-17, 19, 41-42.

For purposes of its antitrust claims, PTI purports to define three "relevant markets" for "deeply discounted first and business class airline tickets" and circumscribes these markets according to the three types of alleged PTI customers. *Id.* ¶¶38-43. PTI's description of these "relevant markets" does not include any information whatsoever regarding competitors in this market other than PTI, Altour, and Amex. *E.g.*, *Id.* ¶¶5-7, 26-31, 34, 44. Yet, PTI implicitly acknowledges (as it must), that there are many other competitors for this business. For example, PTI asserts that Amex complained that its franchisees capture only nine percent (9%) of the Amex card member travel spending. *Id.* ¶15. Thus, PTI acknowledges that 91% of Amex card member travel spending is not channeled through Amex travel representatives. PTI also fails to allege any information regarding the percentage of Amex card member travel spending relative to the non-Amex card member travel spending.

PTI further alleges that, in or about April 2009, Amex and Altour entered an agreement for



Altour purportedly to become the "exclusive" provider of certain services to the Amex network of travel agents (*i.e.,* other franchisees of Amex).[2] Altour also allegedly sought to have Amex terminate PTI's Amex representative agreement. Without any explanation or supporting factual allegations, PTI concludes that these two alleged steps somehow permitted Amex and Altour to increase the price for deeply discounted first and business class air tickets. *Id.* ¶¶26-28.

Bases for Altour's Planned Motion to Dismiss

Altour's intended motion to dismiss will show that PTI's Sherman Act § 1 claims (all that remains) are barred by the applicable four-year statute of limitations in light of PTI's allegations that the purported Amex-Altour agreement at issue was entered in or about April 2009. *E.g., id.* ¶¶45-52, 58. Any attempt by PTI to claim tolling for lack of discovery would clearly be meritless in the face of PTI's allegations that it was aware of the purported agreement no later than a public announcement in April 2009 and, at that time, PTI had enough information to assert concerns that the agreement supposedly restrained trade in violation of antitrust laws. *Id.* ¶¶58-59. As four years from April 2009 is April 2013, the statute of limitations expired at least seven months before PTI commenced this action on December 2, 2013. *See, e.g.*, 15 U.S.C. §15b; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338 (1971).

Altour's intended motion will also demonstrate that the Amended Complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S 662 (2009). The Amended Complaint also depends on many legal conclusions, couched as allegations, which should not be accepted as true. *Id.* at 678-79.

At the outset, the allegations of the Amended Complaint are not sufficient to establish that PTI has standing to pursue any antitrust claims because it does not establish (a) that PTI has suffered an "antitrust injury" (*i.e.,* an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful) or (b) that PTI is an "efficient enforcer" of the antitrust laws (*i.e.,* someone whose injury was directly caused by the alleged restraint of trade and whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement). These requirements arise from the well-established principle that the antitrust laws protect competition, not competitors. *E.g., Laydon v. Mizuho Bank, Ltd.,* 2014 U.S. Dist. LEXIS 46368, *28 (S.D.N.Y. March 28, 2014); *Bhanusali v. Orange Reg'l Med. Ctr.,* 2013 U.S. Dist. LEXIS 113974 (S.D.N.Y. Aug. 12, 2013). For example, PTI lists ways in which it was allegedly harmed by Amex's decision (consistent with Amex's contractual right) not to renew PTI's franchise agreement but PTI does not establish how Amex's decision in any way affected competition in any relevant market (see below). Further, any alleged harm to PTI is contradicted because, as a seller, PTI stands to *gain* from an increase in market price. *E.g., Gatt*

---

[2] The press releases, news reports and emails annexed to the FAC *do not* support PTI's characterization of the Altour-Amex agreement as one that "requires" all Amex franchisees to purchase airline tickets only through Altour. Further, although the FAC is insufficient on its face, because the subject agreement is integral to PTI's claims−and in fact *contradicts* PTI's characterizations of exclusivity−Altour will submit the agreement on its motion so long as the Court allows it to be submitted under seal to protect Altour's confidential business information and trade secrets.

*Commns, Inc. v. PMC Assoc., LLC,* 711 F.3d 68, 76-77 (2d Cir. 2013); *Arista Records LLC v. Lime Group LLC,* 532 F. Supp. 2d 556, 569-70 (S.D.N.Y. 2007).

PTI also fails to plausibly allege an appropriate "relevant market" within which competition has been unreasonably restrained. For example, PTI fails to explain why it is proper to look only at the narrow class of "deeply discounted first and business class tickets" other than this it is where PTI has purportedly developed a market "niche." FAC ¶14. Yet, discounted pricing is not a proper market limitation. *E.g., Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 2012 U.S. Dist. LEXIS 86628, *31 (S.D.N.Y. June 20, 2012); *Skyline Travel, Inc. v. Emirates*, 2011 U.S. Dist. LEXIS 36377, *7 (S.D.N.Y. Mar. 28, 2011); *Gabriel v. Gabriel Bros.,* 1994 U.S. Dist. LEXIS 9455, *12-13 (S.D.N.Y. 1994); *Theatre Party Assoc., Inc. v. Shubert Or., Inc.*, 695 F. Supp, 150, 154 (S.D.N.Y. 1988).

Equally fatal to PTI's proposed "relevant market(s)" is PTI's failure to address essential market considerations such as the existence of (or lack of) competitors market-wide, inter-changeability of products or services within the market, cross-elasticity of demand, and the basis for the alleged geographic boundaries. Failure to address these considerations, alone, requires dismissal. *E.g., Chapman v. N.Y.S Dept. of Youth*, 546 F.3d 230, 237-238 (2d Cir. 2008).[3] In addition, the plausibility of PTI's alleged "relevant markets" is plainly contradicted by the Amended Complaint itself, as well as by common sense and market realities. *See, e.g., Bhanusali*, 2013 U.S. Dist. LEXIS 113974 (court is to "draw on its judicial experience and common sense") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). For example, PTI ignores the role of the airlines themselves in setting prices for and selling their own tickets. Also, the fact that there are many competitors in the market for airline tickets, even if narrowed to that for "discounted tickets" is apparent to anyone who has ever logged on to Orbitz.com, Kayak.com, Expedia.com, or the like. Another example is seen by a simple Google search for "ticket consolidators," which yields numerous advertisements and industry news articles showing that this is a robust market with many competitors (and is not limited to the U.S. markets as suggested by PTI). *E.g.,* http://www.usaca.com/about.php (webpages of a national trade association of airline ticket consolidators discussing services provided and identifying members). The same is true of a Google search for "travel consortiums." PTI also relies on the plainly erroneous assumption that Amex cardholders cannot purchase airline tickets from vendors outside the Amex network. Again, this is contradicted by common knowledge of how Amex credit cards work *and* by PTI's own allegation that only 9% of Amex card member travel spending is with in-network travel agents. FAC ¶15.

Additionally, Sherman Act § 1 only prohibits only "unreasonable" restraints of trade or commerce. *E.g., Laydon,* 2014 U.S. Dist. LEXIS 46368, *36 (citations omitted). *Per se* illegality (as alleged in "Count I") is applied infrequently and is "'reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Id.* *37 (citations omitted). *Per se* illegality also does not apply to vertical agreements between market participants at different levels of the distribution chain, which is what PTI

---

[3] This deficiency was also noted in Altour's first pre-motion letter request. [Dkt. 13 p. 6].



describes here.[4]  *See, e.g., Bel Canto,* 2012 U.S. Dist. LEXIS 86628, at *12-22; *Integrated Sys. & Power, Inc. v. Honeywell Int'l., Inc.*, 713 F. Supp. 2d 286, 295 (S.D.N.Y. 2010).   Additionally, while PTI liberally sprinkles the Amended Complaint with accusations of a "conspiracy" and "price fixing" and "market division", it fails to present any well-pleaded facts to support these accusations.  *See, e.g.*, *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 35 Fed. Appx. 29 (2d Cir. 2002); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,* 2013 U.S. Dist. LEXIS 171871 (S.D.N.Y. Dec. 6, 2013).

Under the "rule of reason" (alleged in "Count II") a plaintiff must show that the defendant entered an agreement that has produced an adverse, anticompetitive effect.  Conduct that is "only unfair, impolite or unethical" does not give rise to Sherman Act liability. *Laydon*, 2014 U.S. Dist. LEXIS 46368, *38 (citations omitted).  Here, the flaws of PTI's relevant market description discussed above demonstrate that PTI has failed to plausibly plead how Amex's relationships with PTI and Altour, respectively, were not maintained consistent with lawful and legitimate business practices.  Rather, the Amended Complaint's conclusory allegations that the complained-of conduct had the result of insulating Altour from price competition and/or allowing Altour to increase the price of plane tickets are utterly implausible and contradicted by common knowledge that the market for plane tickets–even the narrowly defined market for "discounted first and business class plane tickets"–has countless suppliers competing mainly through pricing.  *E.g.*, *Bel Canto*, 2012 U.S.Dist. LEXIS 86628 at *32 (increase in price may stimulate competition).

Accordingly, Altour respectfully requests a pre-motion conference so that it may file its contemplated motion to dismiss.  Altour further respectfully reserves its right to raise any additional relevant issues it may identify upon review of the Prior Settlement Agreement between PTI and Amex and related materials.  Altour also requests that Your Honor adjourn the deadline for the parties' joint pre-trial submission (currently due April 17) and initial pretrial conference (currently scheduled for April 24, 2014) to a date after resolution of Altour's motion to dismiss and stay discovery pending the motion to dismiss.

> Respectfully submitted,
>  /s/ Evan Shapiro
> Evan Shapiro

cc:  <u>Via ECF and Courtesy Copy Via Email</u> to David DeToffol, Esq., *Counsel for Plaintiff PTI Travel Inc*.

4816-8251-6761

---

[4] Although PTI asserts that Altour and Amex agreed to "horizontal market division" (FAC ¶53) and describes its own sales to other travel agents as "horizontal" sales (*id.* ¶43), what PTI in fact describes are sales in the course of a *vertical* chain of the wholesale to retail supply for airline tickets.  *E.g. NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128, 135-36 (1998) (agreements between firms at different stages of the supply chain are vertical, even if the agreement limits competition at the reseller's level).